UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ERNESTO RODRIGUEZ,                              :
                                                :
                      Plaintiff,          :
                                                :     COMPLAINT
          -against-                        :
                                                :
CITY OF NEW YORK, NYPD OFFICER                  :
ALEJANDRO RIVAS, Shield # 7139, NYPD            :     Jury Trial Demanded
SERGEANT FREDY CRUZ, Shield # 887,              :
JOHN DOE NYPD OFFICERS 1-4,                     :
                                                :
                      Defendants.         :
-------------------------------------------------------------- x

      This is an action to recover money damages arising out of the violation of Plaintiff Ernesto Rodriguez's ("Mr. Rodriguez") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

    1.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

    2.     The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

    3.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) as the claim arose in the District.

## JURY DEMAND

    4.     Mr. Rodriguez respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

    5.     Mr. Rodriguez lives in New York County and the incident giving rise to this case occurred in New York County.

    6.     Defendant City of New York was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8. That at all times hereinafter mentioned, Defendants Police Officer Alejandro Rivas, Shield # 7319, Sergeant Fredy Cruz, Shield # 887, and John Doe Police Officers 1-4 ("Doe Officer Defendants") were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## **FACTS**

11. On or about May 23, 2013, Mr. Rodriguez was returning to his home from the hospital where he had a doctor's visit relating to a chronic medical issue.

12. Someone else was entering Mr. Rodriguez's building at the same time and, also at the same time, Doe Police Officers approached.

13. On information and belief, one of the Doe Police Officers was Officer Garcia and the other was Officer Regan of the 33d Precinct. On information and belief, a third Doe Police

Officer was a supervisor who went by the last name of Acosta and who, eventually being aware of his officers' actions, failed to intervene to preserve Mr. Rodriguez's constitutional rights.

14. Mr. Rodriguez heard one of the Doe Officers say, in sum and substance, "Is it him?" The second Doe Officer indicated that he thought that it was "maybe him," and the first Doe Officer said "Are you sure?"

15. Doe Police Officers did not ask for Mr. Rodriguez's identification at the scene and took him to the 33rd Precinct without asking his name.

16. It was not until much later at the precinct that anyone asked Mr. Rodriguez for his identification.

17. Doe Officers told Mr. Rodriguez that they were going to give him a summons at the precinct for disorderly conduct.

18. Mr. Rodriguez could not imagine why he would be charged for disorderly conduct as he had just come from the hospital and he had done nothing out of the ordinary.

19. Mr. Rodriguez was incarcerated and the next day taken to Central Booking, where he was charged with a single charge of sale of a controlled substance relating to an incident which occurred on Saint Nicholas Avenue in New York County on May 9, 2013, roughly two weeks prior to Mr. Rodriguez's March 23, 2013 arrest.

20. In a criminal complaint presented to employees of the District Attorney's Office, Defendant Officer Rivas falsely stated in the criminal complaint that on May 9, 2013, Mr. Rodriguez sold cocaine to a third party. This was not true.

21. Defendant Officer Rivas does not state in the complaint the basis for the allegation made against Mr. Rodriguez.

22. Defendant Sergeant Cruz stated in the criminal complaint that he had recovered cocaine from the third party to whom Defendant Officer Rivas falsely stated that Mr. Rodriguez sold cocaine.

23. On information and belief, Sergeant Cruz knew that Officer Rivas's allegation against Mr. Rodriguez was not supported by probable cause and he failed to intervene in order to protect Mr. Rodriguez from the violation of his constitutional rights.

24. When Mr. Rodriguez returned to the precinct to recover his vouchered property, a Doe Officer gave Mr. Rodriguez a related sheet of paper relating to the vouchered property.

25. The name "Jonathan" and a last name appeared on the sheet of paper (Mr. Rodriguez recollects that Jonathan was the first name, although he may be mistaken) and Mr. Rodriguez asked "Who is Jonathan?"

26. On hearing Mr. Rodriguez's question, the Doe Officer snatched the voucher receipt from Mr. Rodriguez's hand, ripped off the part that said "Jonathan," returned the balance of the page to Mr. Rodriguez, and stated: "You were not supposed to see that."

27. Within roughly one to two days after Mr. Rodriguez's release, he returned to see a doctor for examination and treatment as a result of his incarceration. Mr. Rodriguez's medical condition requires him to eat from a very specific and limited list of foods five times a day in order to keep stable. During his incarceration, Mr. Rodriguez was unable to follow this regimen.

28. Approximately two weeks later, before his next court date and without having to reappear in court, Mr. Rodriguez received a letter in the mail indicated that the charge brought against him had been dismissed on the District Attorney's Office's motion.

29. Defendants unconstitutionally deprived Mr. Rodriguez of his liberty, caused him physical injury, damaged his reputation, caused him emotional distress and fear that manifested in physical ailments and more. Mr. Rodriguez continues to suffer these damages.

4

30. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

31. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

32. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., No. 09 Civ. 8, No. 09 Civ. 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

33. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

34. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Mr. Rodriguez's constitutional rights.

35. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

36. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

37. All of the aforementioned acts deprived Mr. Rodriguez of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

38. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

39. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

40. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

41. As a result of the foregoing, Mr. Rodriguez is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

42. Mr. Rodriguez repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

43. Defendants, by their conduct toward Mr. Rodriguez alleged herein, violated Mr. Rodriguez's rights guaranteed by 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

44. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Mr. Rodriguez of his constitutional rights.

45. As a direct and proximate result of Defendants' unlawful conduct, Mr. Rodriguez sustained the damages hereinbefore alleged.

## SECOND AND THIRD CLAIMS
## FALSE ARREST AND MALICIOUS PROSECUTION

46. Mr. Rodriguez repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

47. Defendants violated the Fourth, Fifth and Fourteenth Amendments because they arrested and searched Mr. Rodriguez without probable cause.

48. Defendants then caused the commencement of a criminal proceeding against Mr. Rodriguez and continued that proceeding despite the lack of probable cause.

49. That prosecution ultimately terminated in Mr. Rodriguez's favor when the state court dismissed all charges against him.

50. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Rodriguez of his constitutional rights.

51. As a direct and proximate result of Defendants' unlawful conduct, Mr. Rodriguez sustained the damages hereinbefore alleged.

## FOURTH AND FIFTH CLAIMS
## FABRICATION OF EVIDENCE AND DENIAL OF A FAIR TRIAL

52. Mr. Rodriguez repeats and re-alleges each of the preceding allegations in this Complaint with the same force and effect as if fully set forth herein.

53. Defendants, by their conduct toward Mr. Rodriguez herein alleged, fabricated evidence against Mr. Rodriguez knowing that the evidence in question would likely influence a grand jury and trial jury. This evidence fabrication corrupted Mr. Rodriguez's fair trial rights as guaranteed by 42 U.S.C. § 1983, the Sixth and the Fourteeth Amendments to the Constitution of the United States.

54. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Rodriguez of his constitutional rights.

8

## SIXTH CLAIM
## FAILURE TO INTERVENE

55. Mr. Rodriguez repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56. The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

57. Accordingly, the Individual Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

58. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Rodriguez of his constitutional rights.

59. As a direct and proximate result of Defendants' unlawful conduct, Mr. Rodriguez sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## MONELL

60. Mr. Rodriguez repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

61. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

62. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Rodriguez's rights as described herein. As a result of the failure of

the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

63. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

64. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Rodriguez's safety, well-being and constitutional rights.

65. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Rodriguez as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Mr. Rodriguez respectfully requests the following relief:

 A. An order entering judgment for Mr. Rodriguez against Defendants on each of their claims for relief;

 B. Awards to Mr. Rodriguez for compensatory damages against all Defendants, jointly and severally, for their violation of Mr. Rodriguez's Fourth, Fifth, Sixth and Fourteenth

Amendment rights, the amount to be determined at jury trial, which Mr. Rodriguez respectfully demands pursuant to FRCP 38;

  C. Awards to Mr. Rodriguez of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Mr. Rodriguez's constitutional rights and welfare, the amount to be determined at jury trial, which Mr. Rodriguez respectfully demands pursuant to FRCP 38;

  D. Awards to Mr. Rodriguez of the costs of this action, including reasonable attorneys' fees;

  E. Such further relief as this Court deems just and proper.

DATED: February 1, 2016
    New York, New York

               /s
               Ryan Lozar  (RL0229)
               305 Broadway, 9th Floor
               New York, New York 10007
               (310) 867-1562

               *Attorney for Plaintiff*