The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



JANUARY 8, 2017

Re:     Rodriguez v. City of N.Y., No. 16 Civ. 744 (KPF) (SDNY)

Dear Judge Failla:

I am Plaintiff's counsel in the above-captioned Section 1983 action alleging, among other things, fabrication of evidence and false arrest. As the Court may recall, Mr. Rodriguez was arrested on May 23, 2013, in connection with an allegation that a police officer on a rooftop recognized him as being a participant in a hand to hand sale of a controlled substance on May 9, 2013.

Last week, Defense counsel filed a motion with the Court seeking a conference relating to the Parties' failure to settle the case. I join in that request for conference only because the Parties have discovery disputes that require the Court's attention, as detailed in this letter motion. After raising the discovery disputes I will state Plaintiff's position relative to the failed settlement.

Before I address those matters, I reiterate Defendants' statement to the Court that the Parties feel confident that they can and will meet the Court's pretrial schedule deadlines without requiring extension. Insofar as this letter is four pages, I respectfully ask that the Court permit the extra page, which goes beyond the limit set forth in its Individual Rules because while I have kept Plaintiff's motion to compel to the three-page limit, the fourth page addresses Defendants' settlement-related motion.

I.      **Plaintiff moves to compel Defendants' disclosure of various records.**

   a. **The relevance of precinct roll calls and Defendant Rivas memo books for May 9, 2013, and May 23, 2013**

As the Court may recall, Defendants arrested Mr. Rodriguez on May 23, 2013, after Defendant Acosta, who was conducting surveillance of the street from a building rooftop, radioed colleagues on the ground to say that Defendant Rivas—on the rooftop with Defendant Acosta at the time—recognized Mr. Rodriguez as the subject of an open complaint relating to a May 9, 2013, cocaine sale. Defendants Cruz, Regan and/or Guzman arrested Mr. Rodriguez when he eventually walked to their location. Later, Defendant Acosta also reported to the D.A.'s Office that Defendant Rivas was the source of this identification.

Mr. Rodriguez has requested, but Defendants have not produced, Defendant Rivas's memo books from May 9 and/or May 23. Mr. Rodriguez believes that these are extremely relevant records in light of Defendant Rivas's centrality to the incident. More broadly, Mr. Rodriguez argues that the precinct's May 9, 2013, and May 23, 2013, roll calls are of central importance in identifying non-party witnesses to Defendant Rivas's purported May 9, 2013, and May 23, 2013, observations, and more. Yet Defendants have not produced these records, either, despite their being the subject of Plaintiff requests dating back to the mediation, as roll calls are discovery ordered by Local Rule 83.10.[1]

---

[1] Defendants' also must produce Defendant Regan's memo books but have not yet done so.

### b. Information relating to the arrests/prosecutions of the May 9, 2013, arrestees

Mr. Rodriguez has requested, and Defendants have failed to produce, information relating to the two <u>other</u> arrests made on May 9, 2013, arising from the same alleged cocaine sale (one individual was arrested for buying and one individual was arrested for selling) for which Mr. Rodriguez was arrested on May 23, 2013. If these other two individuals' charges were dismissed and sealed, the fact and timing of that would be of great relevance because the D.A. would have already determined that the incident was the basis of unsustainable prosecution. Mr. Rodriguez argues that the mere fact and timing of these other matters' dismissals and sealings are not the sort of information protected by Section 160.50 such that Defendants must at least confirm the nature of the dispositions. If Mr. Rodriguez can then pursue unsealing of additional aspects of those cases, he may, but it is fruitless for Mr. Rodriguez to file a motion to unseal two case files without knowing if they are even, in fact, sealed. Relatedly, if the matters are not sealed because the other two arrests relating to the May 9, 2013, incident resulted in convictions, then Defendants' obligation to produce their statements with respect to all arrests and prosecutions arising from the May 9, 2013, matter implicating Mr. Rodriguez becomes even clearer because the statements about the incident therein remain relevant but are not sealed at all.

### c. Defendant Cruz's field test performed upon the material seized on May 9, 2013, and the related evidence voucher

Mr. Rodriguez has requested, and Defendants have failed to produce, Defendant Cruz's alleged May 9, 2013, positive field test upon the substance seized from the alleged buyer of the cocaine. The same is true for Voucher No. 1000331710 and related chain of custody records. Defendants have produced an NYPD Lab Report for the as-yet-unproduced Voucher No. 1000331710, which purports to have tested the material on May 28, 2013, but: (1) this was well after Mr. Rodriguez's May 23, 2013, arrest and May 24, 2013, release from custody, and (2) the lab report states that the material vouchered therein corresponds solely to a forty-six year old man with the initials J.E. The fact that the lab report and the voucher it references corresponds to J.E., a forty-six year old, is peculiar not only because it does not also correspond to twentysomething Mr. Rodriguez, but because it references only one of the two alleged co-arrestees (a buyer and a seller who is not Mr. Rodriguez) taken into custody before Mr. Rodriguez in connection with the May 9, 2013, incident.
Although the evidence voucher alone is relevant to Mr. Rodriguez's claim, the full "remarks" and chain-of-custody records relating to the evidence voucher, which I understand may be queried through the City's Property and Evidence Tracking System ("PETS"), are also relevant to show whether and to what extent Mr. Rodriguez was ever at any point added to the voucher as a connected arrestee.

### d. SPRINT reports

Very limited SPRINT reports have been produced in this case, despite Mr. Rodriguez's requests for the same, which is problematic in light of the allegations that Defendants initially arrested Mr. Rodriguez on the basis of two layers of radioed hearsay—i.e., Defendant Rivas tells Defendant Acosta that he recognized Mr. Rodriguez, then Defendant Acosta radios to other Defendants that Defendant

Rivas recognizes Mr. Rodriguez.  Then, when Defendants arrested Mr. Rodriguez on the basis of Defendant Acosta's description that Mr. Rodriguez was wearing gray and black clothes, Defendant Rivas identified Mr. Rodriguez's facial features through a radioed-back description of the same.  Thus, it stands to reason that the radio records will shed light on whether and to what extent this method—radio descriptors of someone's face—can establish probable cause to arrest in lieu of formal in-person identification.[2]

### e. Defendants' disciplinary files

The final category of discovery includes the Defendants' disciplinary matters.  Working from Defendants' production of disciplinary indices, Plaintiff supplied Defendants with alpha-numeric file identifiers of specific interest.  In this respect, Plaintiff attempted to be very focused and thus respectful of Defense Counsel's time.  Defendants have not produced any of this material.  Among the matters requested corresponds to a personnel event close in time to Mr. Rodriguez's arrest implicating all five Individual Defendants working together.[3]  Other matters reflect failures to follow recordkeeping protocols, an allegation which is plainly relevant to the instant case vis-à-vis the absence of any departmental records created contemporaneous with the May 9, 2013, complaint that set forth the physical description of the "wanted" individual whom Defendants later alleged Mr. Rodriguez to be.  Finally, there are allegations against some Individual Defendants in these personnel events that go directly to truthfulness, i.e., the making of false statements to a City entity and/or fraud.

## II. Plaintiff's Response To The Settlement Matter Discussed At Docket No.

Finally, I would like to provide a response to the settlement matter for which Defendants seek conference with the Court at Docket No. 41.  As I see it, there is not much to discuss.  In the lead up to two of the Defendants' depositions on January 3, 2017, the Parties agreed to attempt to settle the case but that if we were unsuccessful we would go forward with the January 3, 2017, depositions.

---

[2] It was not until much later when either Defendant Acosta and/or Defendant Rivas positively identified Mr. Rodriguez at the precinct when they saw the arrested party for the first time, by which point it stands to reason that if Arresting Defendants had made an error, compensable constitutional damage had already been done by virtue of the identification method.

[3] This is not the only time that part of the team working together caused an alleged event.  Less than one year prior to the incident with Mr. Rodriguez, Defendants Cruz, Rivas and Regan were involved in an incident with extremely similar facts that gave rise to a federal civil rights litigation.  In Alicea v. City of N.Y., No. 13 Civ. 7073, 2016 WL 2343862 (S.D.N.Y. May 2, 2016), a civil rights plaintiff sued Defendants Cruz and Regan for falsely arresting him on the basis of Defendant Rivas's generic radio description of him as someone identified as participating in a drug transaction.  In contrast to Alicea, where Defendant Rivas allegedly observed the plaintiff engage in a hand to hand drug transaction on the day of the arrest, here the facts show this same allegedly infirm approach to identification occurring with a two-week gap between the incident and the arrest.

In the context of those discussions, Defendants asked Mr. Rodriguez to lower his demand. Sometime around the week of December 26, 2016, Mr. Rodriguez lowered his pre-deposition demand and I served Defendants with it ("the Pre-Deposition Demand").

On December 28, 2016, Defense Counsel wrote to me and said no to the Pre-Deposition Demand. At the same time, she tentatively suggested she might make a lower offer, and would Mr. Rodriguez accept that ("the Lower, Hypothetical Offer")? In that email, she confirmed the January 3, 2017, depositions for two Officer Defendants in the event that Mr. Rodriguez did not accept the Lower, Hypothetical Offer.

On December 30, 2016, I left a voicemail with Defense Counsel stating that Mr. Rodriguez declined the Lower, Hypothetical Offer, and I also confirmed that I would see her and her clients at the January 3, 2017, depositions.

I spent part of the New Year's holiday weekend in my office preparing for the January 3, 2017, depositions. On January 2, 2017, with my outlines for the Defendant Officers complete and binders prepared, and after speaking with Mr. Rodriguez, I sent an email to Defense Counsel stating that insofar as the matter had not settled before the depositions, Mr. Rodriguez withdrew his Pre-Deposition Demand. To me, this was perfectly logical because, as each new stage of litigation begins, the efficiency discount that existed in the preceding stage of litigation becomes obsolete.

On the morning of January 3, 2017, I received a message from Defendants stating that it was not right that Mr. Rodriguez would withdraw the Pre-Deposition Demand, which is also the position Defendants took before the Court in their motion for conference at Docket No. 41. Defendants then cancelled the January 3, 2017, depositions, a few hours before they were to begin. Blessedly, I was able to catch the reporter I had booked in those wee morning hours without incurring a bust fee.

To my view, the failed settlement does not require the Court's intervention as it all seemed to be a rather natural litigation experience to me, although I am glad to answer any of the Court's questions about it at related conference. Finally, insofar as Mr. Rodriguez does not request settlement conference, I ask that the Court not require his presence there in person or by telephone. However, I offer to be sure to have him available for me to reach during the conference by telephone in case that may prove helpful.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiff Ernesto Rodriguez