**MEMO ENDORSED**

The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



JANUARY 29, 2017

<pre>
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 31, 2017
</pre>

Re:   Rodriguez v. City of N.Y., No. 16 Civ. 744 (KPF) (SDNY)

Dear Judge Failla:

    I am Plaintiff's counsel in the above-captioned Section 1983 action alleging, among other things, fabrication of evidence and false arrest.  Fact discovery closes on January 31, 2017.  On Friday, the Parties completed all depositions.  A few categories of paper discovery remain in dispute.  I write to raise these disputes with the Court in advance of the February 9, 2017, conference.  If the Court would like to set earlier conference to address these discovery matters specifically, the Parties are available at the Court's convenience.  To the extent any of these disputes are resolved in the interim, I will file a status report with the Court letting it know.

    It should be noted that some of these disputes are outstanding discovery that the Court directed Defendants to produce during its January 13, 2017, conference.  I include them here to assure that Plaintiff is not prejudiced by their absence at trial.

I.   **SNEU Manual And Records**

    On May 23, 2013, Defendants arrested Mr. Rodriguez.  There are conflicting views as to why they did this, as Mr. Rodriguez appears to have been initially arrested for a baseless marijuana offense before Defendants switched gears and connected him to a controlled-substance sale that they claim occurred on May 9, 2013.  Whatever occurred, Defendants concede that they were performing Street Narcotics Enforcement Unit ("SNEU") work at the time.

    In order to perform SNEU work, an officer must have received SNEU training and be SNEU qualified.  In June 2012, after extensive media coverage of police misconduct in the context of a SNEU operation revealed that at least one of the officers had never been SNEU-qualified through the receipt of SNEU training, NYPD Commissioner Ray Kelly issued an Interim Order directing all SNEU supervisors to verify that any and all SNEU officers had received proper SNEU training.

    Sergeant Cruz testified that he had never verified his officers' SNEU training, although he offered that an administrative office at the precinct would have done this, and that the information would appear on the Defendants' Central Personnel Indices.  Accordingly, Plaintiff has requested that Defendants produce verification from these places regarding whether and when they received SNEU training, and the nature of the training.  As for the nature of the training, Defendants testified that SNEU training involved modules relating to, among other things, narcotics identification and suspect identification techniques.  These subjects are directly related to Mr. Rodriguez's challenge of Defendants' probable cause to arrest him in this litigation, and his related Monell claim.  Thus, Plaintiff has requested that Defendants produce the SNEU manual and related records.

## II.     Evidence Vouchers And Chain Of Custody Records

During the January 13, 2017, conference, the Court directed Defendants to produce the evidence voucher for the cocaine seized during the May 9, 2013, incident, which Defendants allege Mr. Rodriguez was involved in selling to a buyer. Defendants produced a draft version of this voucher. All deponents commented that this document was not the actual voucher, and that it only contains part of the information that would appear on the true document. Plaintiff renews his request for the actual voucher.

Plaintiff has also requested two other vouchers. One is the voucher for JR's marijuana. This is relevant to Plaintiff's case because one of the Defendants' CCRB testimony was that JR was the original target of the SNEU team, and that Mr. Rodriguez only came to their attention in connection with the JR operation. In fact, when Mr. Rodriguez was entered into the command log at the precinct, he was initially registered as being arrested for a marijuana offense. The command log entry went so far as to note the arrest's compliance with a departmental order specific to marijuana offenses in particular. Thus, statements relating to the marijuana seizure are relevant to Plaintiff's claims.

The other voucher that Plaintiff has requested is one related to a man named "BP." In order to understand the relevance of this voucher, it should be noted that although Defendants appear to have initially arrested Mr. Rodriguez for a baseless marijuana offense, Defendants eventually wrote up Mr. Rodriguez's arrest paperwork for criminal sale of a controlled substance, linking his arrest report to a May 9, 2013, complaint reading only that the defendant (singular) was found in possession of alleged cocaine. Mr. Rodriguez's arrest report is one of three that are linked to this simple-possession complaint.

During Defendant Regan's deposition, he testified that prior to the deposition he had reviewed the voucher of evidence relating to one of the other arrestees connected to the complaint that alleged supported Mr. Rodriguez's arrest. In light of the fact that this document was part of Defendant Regan's deposition preparation, and in light of the fact that the record is clearly already in Defense Counsel's possession, Plaintiff requests that the Court direct Defendants to produce it. Its relevance lies in the fact that because Defendants eventually claimed that Mr. Rodriguez sold alleged cocaine to <u>someone</u> on May 9, 2013, Defendants should have to produce the vouchers describing the alleged cocaine that Mr. Rodriguez allegedly sold.

## III.    Observation Post Location

One of Mr. Rodriguez's central arguments in this litigation is that on May 23, 2013, Defendants did not have probable cause to arrest him for a sale transaction that they claim occurred on May 9, 2013. Among other things, Mr. Rodriguez argues that the witness officers' identification of him as an individual involved in the May 9, 2013, alleged transaction was not sufficiently reliable to support probable cause to arrest him. The identification was unreliable for various reasons—the passage of time, the busy-ness of the street corner where the event occurred, the absence of any records created contemporaneously with the May 9, 2013, event to provide a physical description of a wanted suspect and/or the offense itself, and more.

In addition, and importantly, the geographical distance between the location of the alleged crime and the location of the officer witness undermines the reliability of the officer's positive identification of Mr. Rodriguez as someone involved in the May 9, 2013, event.

Although Defendants testified that the Observation Post was roughly two blocks from where the May 9, 2013, and May 23, 2013, events occurred; that the Observation Post was on the top of a 15-story building; that the Observation Post was one of the tallest buildings in the area; that the Observation Post was one of a few that they used in the area; and that criminal defendants have likely already learned the Observation Post's address through criminal prosecutions growing out of observation operations, Defendants refuse to provide Plaintiff with the actual address of the Observation Post. Plaintiff needs this information in order to visit the building's roof and take photographs from Defendants' May 9, 2013, and May 23, 2013, vantage point.

Defendants' objection to producing the address appears to be based upon the law enforcement privilege. However, in light of all the information that is known about the Observation Post, its utility as a law enforcement tool will not be compromised by Defendants' production of the address. At the same time, Plaintiff's need for it to prove his unreliable-identification argument in this Section 1983 action is significant. I also note that the Parties are governed by a Confidentiality Order in this case which should assuage Defendants' concerns about the sensitivity with which the Post address will be treated.

## IV. Roll Call Records

The Court may recall that Plaintiff's January 6, 2017, motion to compel sought Officer Rivas's memo book entries for May 9, 2013, and May 23, 2013, which Plaintiff had requested in August 2016 document requests. Docket No. 41. In the alternative, Plaintiff sought 33rd precinct roll calls for those dates. Id. During the January 13, 2017, conference with the Court, Plaintiff's Counsel represented to the Court that he would withdraw his request for the roll calls so long as Defendants produced the Rivas memo books.

Plaintiff now renews his request for the roll calls, because Defendant Rivas testified at deposition that he is unable to produce any memo book entries for the dates under study in this litigation. At the same time, Rivas testified that he has no memory of Mr. Rodriguez and/or the May 9, 2013, and May 23, 2013, events for which Acosta told the DA's Office Rivas was the material witness. In the absence of any records created by Rivas showing that he worked, and where, on May 9, 2013, and May 23, 2013, the 33rd Precinct roll calls contain relevant information in this respect that I cannot obtain from any other source.

I would like to note that Defendants are already in possession of the May 23, 2013, roll calls, and possibly the May 9, 2013, roll calls as well. I say this because the records have been produced to Plaintiff a few months ago, completely redacted. Thus, Defendants' production of these records appears to at least partly be a matter of un-redacting the already-produced pages.

## V. Select Disciplinary Files

In Plaintiff's August 2016 document requests, he asked Defendants to produce disciplinary files of particular relevance to the facts of this case. In the months that followed, Defendants failed to produce these records, and Defendants also declined to tell Plaintiff that they opposed their production.

On January 6, 2017, Plaintiff filed a motion with the Court to compel their production. Docket No. 41. On January 13, 2017, Defendants represented to the Court that the files had been ordered, and

the Court directed the Parties to move for in camera review of the files if Defendants did in fact dispute their obligation to produce them.  Docket Entry 1/11/2017.

Defendants have still not taken a position as to whether they will produce these files.  As a result, while the discovery period remains open, I feel I must treat the failure to respond as a refusal to produce.  Accordingly, I ask that the Court direct Defendants to produce the files to Plaintiff, or to produce them to the Court for in camera review.

By way of brief background, one of the files relates to substantiated charges relating to a Defendants' truthfulness; another relates to substantiated charges relating to a Defendant's violation of an individual's Fourth Amendment rights, which are at issue in this case; and another addresses a nearly two-year investigation into an incident involving a group of the Defendants and the improper processing of a narcotics incident.  This was not the first time that a group of the Defendants were alleged to have committed misconduct together.  There are at least two other incidents in which complainants charged that Defendants falsely arrested them under circumstances very similar to those alleged by Mr. Rodriguez in this case, i.e., faulty radioed description of a wanted individual giving rise to arrest.

VI.     Conclusion

In light of the foregoing, Plaintiff respectfully requests the Court's assistance in resolving these final discovery matters that the Parties have been unable to resolve on their own.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiff Ernesto Rodriguez

```
A discovery dispute conference is set for February 3, 2017, at 4:00
P.M. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley
Square, New York, New York, 10007.  Per the Court's discussion with
the parties, Defendants shall file a responsive letter by close of
business on February 1, 2017.

Dated:    January 31, 2017           SO ORDERED.
          New York, New York
```

*Katherine Polk Failla*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE