1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ERNESTO RODRIGUEZ,

4                  Plaintiff,

5          v.                          16 CV 744 (KPF)

6  CITY OF NEW YORK, ET AL.,

7                  Defendants.

8  ------------------------------x
                                      New York, N.Y.
9                                     January 13, 2017
                                      9:00 a.m.
10
   Before:
11
                   HON. KATHERINE POLK FAILLA,
12
                                      District Judge
13
                         APPEARANCES
14
   LAW FIRM OF RYAN LOZAR
15      Attorney for Plaintiff Rodriguez
   BY:  RYAN M. LOZAR
16
   NEW YORK CITY LAW DEPARTMENT
17      Attorneys for Defendants NYC Et Al
   BY:  MELANIE M. SPEIGHT
18

19

20

21

22

23

24

25

1            (In chambers; Telephone conference)

2            MR. LOZAR:  Hi.  Good morning.

3            This is Ryan Lozar, representing Ernesto Rodriguez.

4            MS. SPEIGHT:  Good morning.

5            This is Melanie Speight, of the New York City Law

6   Department, for the defendant.

7            THE COURT:  Good morning to both of you.

8            This is Judge Failla.  I am going to ask you this

9   morning just to speak a little bit slower and louder because

10  both of you, the phones you are coming in on are a little bit

11  faint but let me just explain or at least reiterate why we're

12  here.

13           I'm here as a consequence of letters that I received

14  on the 6th, the 8th and the 12th of January regarding various

15  issues.  What I'd like to do is to begin with the discovery

16  issues.  And to the extent necessary we can talk about the

17  settlement issues that were raised in the early I guess, first

18  two letters.  So, let me begin with those please.

19           Going through the categories that are listed in

20  Mr. Lozar's letter, I see that there seemed to be some on which

21  Ms. Speight agrees.  So, let me see if we can find some

22  resolution or common ground on those terms.

23           Ms. Speight, do I understand you will be producing

24  defendant Rivas' memo books from the two incidents, is that

25  correct?

1          MS. SPEIGHT:  Correct, your Honor.

2          THE COURT:  OK.  And the next issue were the roll

3     calls which I think you indicated you were disinclined to

4     produce.

5          So, Mr. Lozar, what is it about the roll calls that

6     will assist you in this matter?

7          MR. LOZAR:  The roll call, actually, memo books for

8     Rivas are produced, the relevance of the roll call becomes less

9     significant.  As I got this together and I did an inventory of

10    discovery that I had.  I contemplated a scenario where I was

11    unable to verify that Rivas was present for both incidents

12    through his memo books.  And so I thought that the next best

13    alternative would be to see in the roll calls if he was in fact

14    working the same tours as the other named defendants.  That's

15    "A".  And I could confirm his presence and involvement in that

16    way.  But if in fact defendant Rivas is able to produce memo

17    books then the roll calls become less important.

18         THE COURT:  Okay.  Well, that's good because I wasn't

19    inclined to produce them.  So that make it that much easier.

20         Ms. Speight, what about defendant Regan's memo book?

21         MS. SPEIGHT:  There's no belief or reason to believe

22    that he was involved on the 9th and that's why we're not

23    inclined to produce his memo book from that date.  Also, as a

24    practical matter if I did have it I would produce it just for

25    convenience.  But the same concern doesn't exist.  Officer

1   Rivas plays an important roll in the events of 9th or the

2   events that gave a probable cause on the 23rd but Officer Regan

3   didn't have anything to do with that.

4              THE COURT:  Ms. Speight, when you say you don't have

5   his memo book, is that because there wasn't an effort

6   undertaken to obtain it or he's left the employ of the NYPD or

7   something else?

8              MS. SPEIGHT:  The first, your Honor.  Because in our

9   mind this doesn't have any connection to the case we didn't

10  request it.

11             THE COURT:  I see.

12             Mr. Lozar, why do you believe it's necessary?

13             MR. LOZAR:  The reason I was interested in Officer

14  Rivas' memo book is --

15             THE COURT:  Sir, hold on a second.

16             Mr. Lozar, I'm being advised by the court reporter

17  that it would be helpful if you could articulate very clearly

18  Regan and Rivas.

19             I am asking you about Mr.Regan's memo book and you are

20  now going to tell me why you believe those are relevant and

21  again, I'll ask you just to speak up please.

22             MR. LOZAR:  Yes, of course.  So, the reason I am

23  seeking Officer Regan's memo book is, so Officer Regan was one

24  of three officers who physically arrested Ernesto Rodriguez on

25  May 23rd.  When he appeared before the CCRB to discuss this

1    incident he testified that he only remembered arresting one

2    person on the 23rd, a man named JR.  And when he was shown a

3    photograph of Mr. Rodriguez he had said that he had never seen

4    that man before in his life.

5         Now, at the same time on May 9th, the date when this

6    incident took place that gave rise to the positive

7    identification of Mr. Rodriguez on May 23rd, on May 9th Officer

8    Regan, he was part of the conditions team, the same conditions

9    team that was working on May 23rd.  I don't know if he was

10   stationed alongside Rivas or stationed alongside Cruz on

11   May 9th when they made their observations.  But to the extent

12   that I could place him alongside those partners -- be on that

13   conditions -- on May 9th I think it's relevant to plaintiff's

14   challenge of defendant's claim that Mr. Rodriguez could be

15   positively identified by their conditions team on May 23rd as

16   someone whom they also observed on May 9th.

17        THE COURT:  All right.  Ms. Speight, could you please

18   respond to that argument.

19        MS. SPEIGHT:  Well, it's just supposition.  I mean he,

20   Officer Regan with a "G" is not the first to identify him on

21   the 23rd.  Mr. Lozar just said to the contrary, (inaudible) I

22   didn't know this person before the incident.  He is a member of

23   the conditions team.  All of these officers are members of the

24   same conditions team.  That doesn't mean that they -- to me

25   he's a member of the team.  That doesn't mean that he was

1    standing next or has the same knowledge as his colleague.  And

2    there's no evidence in the case suggesting that he should.

3              THE COURT:  I understand.

4              All right.  Mr. Lozar, why am I hearing about this

5    with 15 days to go in discovery?

6              MR. LOZAR:  -- discovery?

7              THE COURT:  Yes.

8              MR. LOZAR:  The reason is I feel like my answer is not

9    going to please the Court.

10             THE COURT:  It won't.

11             MR. LOZAR:  So, there was a production on October 31st

12   and there was indication that there was a balance of records

13   that was going to be forthcoming after that date.  So, the

14   parties started to talk about settlement and this is the part

15   that I know won't please the Court because the Court

16   specifically advised us, make sure we don't get off track with

17   discovery because we're talking about settlement, and

18   essentially, that is why it is happening that late.  The

19   depositions that were canceled last week I thought they are

20   going to go forward.  And if discovery was outstanding I

21   thought it was forthcoming but effectively when settlement

22   fails all of this kind of kicked (inaudible) and we were

23   positive we could meet the final deadline but it has resulted

24   in this late application.

25             THE COURT:  Right.  So what you are really saying is

1   you did exactly what I told you not to do.  Now you're

2   inconveniencing my schedule in order to cause or ask me to ask

3   the defense to produce documents on an expedited basis because

4   you didn't bother to come to me on the 31st of October.  Am I

5   stating it correctly?

6           MR. LOZAR:  Yes, I think it's a fair characterization.

7           THE COURT:  OK.  Well, I'll keep that in mind.

8           MR. LOZAR:  I apologize.

9           THE COURT:  No.  Apologies are not accepted.  This is

10   exactly what I told you not to do, and there will be

11   consequences to the fact that you waited this long.

12           Now, I am asking the city to produce Officer Regan's

13   memo book entries because recognizing that they may ultimately

14   have no probative value, I will at least let them be produced

15   because I think there is a creditable basis for seeking their

16   production.  But in terms of the schedule of that production,

17   if that complicates or cannot be done prior to Officer Regan's

18   deposition, that's not my concern.  They will work -- I know

19   Ms. Speight understands her obligations and will try and get

20   those materials as quickly as possible but I don't know how

21   long that will take.

22           I'm now moving on to the next thing which would be the

23   arrest records or information relating to the arrests and

24   prosecution of two others on the 23rd of May.

25           And let me just go off the record for a moment.

1        (Discussion held)

2        THE COURT:  Back on the record right now.

3        With respect to the individual whose record, who is

4   identify as JR, these records have been sealed and I am not

5   going to order their production.  I am told that the defense is

6   willing to produce the individual's arrest report and willing

7   to produce a copy of property invoice number 1000331710.

8        Mr. Lozar, in light what of what is being produced,

9   what is it that you need with respect to the related chain of

10  custody records?  Sir.

11       MR. LOZAR:  With respect to -- if I could just make

12  one clarifying point.  I understand the Court's order about the

13  arrest report.  There are two individuals who were arrested

14  prior to Mr. Rodriguez in connection with this incident.  And

15  up until discovery in this case it was understood just that he

16  was added on to one individual's 61.  As it turns out there was

17  a first individual added on to that 61 before individual number

18  two.  And then Mr. Rodriguez became individual number three and

19  so plaintiffs are seeking really all arrest reports that have

20  arisen from that complaint.

21       I think that I just want to clarify because it sounds

22  like we're all talking about one person other than

23  Mr. Rodriguez but it's actually two, two different dates.  So,

24  there's a date between May 9th and May 23rd it turns out when

25  another arrest was tacked on to that complaint.

1   THE COURT:  All right.  Ms. Speight, are you aware of

2   the clarification that Mr. Lozar has just presented to me?

3   MS. SPEIGHT:  No.  Mr. Lozar raised that with me

4   previously on the phone but I think I misunderstood it.

5   Because my understanding that the complaint form that includes

6   plaintiff's arrest relates both is connected to two

7   individuals, JR and then this other individual whose last name

8   is Perez, whose record is not sealed.  Mr. Perez was arrested

9   on May 9th when plaintiff was not.  And then on May 23rd when

10  plaintiff was recognized and arrested another individual was

11  arrested and that second individual, JR, on the 23rd is the

12  person whose records are sealed.

13  So, no, I'm not immediately familiar with the person,

14  the third person.

15  MR. LOZAR:  I'm sorry.  So, the reason why I have

16  identified (inaudible) because there are three arrest numbers

17  that are all different in times that correspond to the

18  complaint.  Mr. Rodriguez was arrested on May 23.  There was an

19  arrest that corresponds to May 9th and then there's a later

20  arrest number that corresponds to redacted individual on that

21  complaint report and that's the person who I'm contending is

22  tacked on much like Mr. Rodriguez was but in between May 9th

23  and May 23rd.  And then Mr. Rodriguez appears un-redacted for

24  the May 3rd arrest number which, and that corresponds to

25  May 23rd.

1      At the same time there are these allegations in this

2  case that there were three people that were involved in this

3  hand-to-hand on the street and so this all makes sense.  This

4  is corroborated by the office.  There should be, according to

5  them, three people arrested eventually in connection with this

6  case because they say that on the day in question, May 9th,

7  Mr. Rodriguez talks to Mr. Act and walked over and talked to

8  Mr -- and intermediary between (inaudible) buyer and the

9  seller.

10      So, that's why there are three actors.  When I see

11  these three arrest numbers that I think that the realization of

12  the story.  So, just to have the buyer's arrest report leaves a

13  (inaudible) story untold

14      THE COURT:  Ms. Speight, would there be an arrest

15  report for each of those arrest numbers?

16      MS. SPEIGHT:  I'm confused to be honest, your Honor.

17  If I'm looking at a document and there are three separate

18  arrest numbers, I know for a person beyond the plaintiff the

19  (inaudible) and the person on the 23rd I can pull it.  I mean

20  those (inaudible) at my office can give me that number.  I can

21  ask our civil litigation officers to see if this is sealed.  If

22  it isn't, we will likewise produce that report but right now

23  I'm still -- really following.

24      THE COURT:  OK.  Well, I'll let you have that

25  conversation offline and look please at those three arrest

1    numbers and see what arrest reports are related to that.  And

2    to the extent those files are not sealed, would you please

3    produce at least the arrest report?

4              MS. SPEIGHT:  Yes, your Honor.

5              THE COURT:  All right.  Thank you.

6              Mr. Lozar, going back to my original question, what

7    additional chain of custody record do you need?

8              MR. LOZAR:  In this case it was the property voucher

9    which Ms. Speight says she is going to produce.  When it's

10   called up there's a way that I know from other cases that I've

11   worked on to indicate when something was sent from the precinct

12   to the lab for testing.

13             And the reason why that is relevant in Mr. Rodriguez's

14   case is so far narcotics as defendant's alleged he had a hand

15   in selling, the only record I've received is the lab report

16   that was produced on May 29th, six days after Ms. Rodriguez's

17   arrest saying that a very small amount of substance that does

18   not appear to have been divided at all to perform a field was

19   tested positive for cocaine.  So, when the defendants represent

20   that Mr. Rodriguez's criminal complaint that Sergeant Cruz, he

21   identified to defendant (inaudible) that substance from May 9th

22   was cocaine then repetitions to the DA's office that in my

23   training and experience this material is in fact crack cocaine.

24   This indicates some sort of earlier field test or some earlier

25   lab treatment perhaps, all of this substance right now I only

1    can see (inaudible) substance was in the lab and tested on May

2    29th, six days after these representations were made to the

3    DA's office and Mr. Rodriguez was arrested and charged.

4         And so, as far as Ms. Speight is pulling voucher from

5    1710 finding out when the material was actually entered at the

6    precinct, finding out when it was sent to the lab because it's

7    all supposed to come back to me later and they say, look, we

8    requested an earlier analysis -- didn't perform -- May 29 --

9         THE COURT:  Mr. Lozar, I need you to slow down, sir.

10        MR. LOZAR:  Sorry.  But basically, the chain of

11   command records will be able to indicate a treatment of the

12   material the defendants are claiming that they had a basis for

13   believing it was cocaine and the timing of that treatment.

14        THE COURT:  And, sir, is this the material seized on

15   the 23rd of May?

16        MR. LOZAR:  No.  It was seized on May 9th.

17        THE COURT:  OK.  All right.  Ms. Speight, what records

18   are there of what was done with any potential contraband or

19   putative contraband that was seized on the 9th of May?

20        MS. SPEIGHT:  (inaudible) which can contains remarks

21   and I think that the remarks section is actually probably the

22   information Mr. Lozar is referring to from our experience with

23   other cases.  I mean (inaudible) more experience producing the

24   vouchers and I've not produced some incompetent query through

25   the invoicing system showing the kind of documents described in

1   the letter is something I should never produced in five years

2   or seen.

3          I think that the remarks section is what he is

4   referring to and that will contain some kind of unusual

5   requests for the lab or something else.  Those will be

6   reflected.  Even when we put a preservation hold on narcotics

7   because of civil litigation, that kind of thing is reflected in

8   the remarks.  So, to the extent they exist on the voucher he

9   will have them.  They're a part of that document.  As far as --

10  and then there's the lab report that's been produced.  As far

11  as other documents, there aren't any kind of core documents

12  that are in my possession and that we would normally even know

13  about to request.  If there's something I don't know now about,

14  at this point there isn't a document that we should have

15  requested that we don't have or that we should have produced

16  that we haven't

17         THE COURT:  When you talk about the voucher are you

18  speaking about properly invoice, the property invoice with 1710

19  is the last four digits or are you speaking about something

20  that's already been produced or will very soon be produced?

21         MS. SPEIGHT:  The invoice, your Honor, ending in 1710.

22         THE COURT:  All right.  So, it's your contemplation

23  that that invoice may have remarks on it that will answer the

24  issues raised by Mr. Lozar a few moments ago.

25         MS. SPEIGHT:  That is my impression, your Honor.  And

1    to the extent it doesn't have remarks but my understanding is

2    that would also answer the inquiry.

3              THE COURT:  OK.  Thank you.

4              MR. LOZAR:  Your Honor, I think just generally if the

5    Court is inclined to think that plaintiffs should be able to

6    see (inaudible) be record that they exist at some point today,

7    I'll send Ms. Speight the expanded invoice that I've seen in

8    other cases.  So, that's like time stamped every time it moves.

9              THE COURT:  All right.  Mr. Lozar, to answer your

10   point, no, I don't.  I think that if you want to send this

11   thing to Ms. Speight and she can find it and if it's not

12   already contained on the properly invoice, then I would like

13   her to do that.  But I'm not ordering her to do anything given

14   the lateness with which you are making this request to me.

15             MR. LOZAR:  OK.  Your Honor, if a field test was

16   performed that wouldn't be on the voucher at all.  The voucher

17   is created when materials invoiced and field test is a separate

18   record.  And when we were talking about what else might be

19   requested that in this section of the discovery motion is

20   something that makes --

21             THE COURT:  Yes.  And, sir, that was what I was going

22   to say if you hadn't interrupted me.

23             Ms. Speight, do you have a field test report for any

24   of the materials seized on either the 9th of May or the 23rd of

25   May?

1          MS. SPEIGHT:  I don't know about the 23rd, your Honor.

2     I don't have the one for the 9th.  But the reason I was

3     disinclined to produce it to the response is because I don't

4     have it.  I certainly don't mind requesting it but I was

5     concerned about, you know, I was concerned about making a

6     representation that I could produce it forthwith because I

7     don't have it right how.  That's something that is similar to

8     the invoice in my mind.  I don't mind requesting it but I don't

9     know that they are just in a database like that.  I believe it

10    is.

11         THE COURT:  All right.  I am going to ask you to look

12    for it with the proviso that I had earlier that I don't want it

13    to result in folks asking that depositions be moved after the

14    close of discovery.

15         MS. SPEIGHT:  Understood.

16         THE COURT:  OK.  I understand there to be no Sprint

17    records, so I'm not ordering their production.

18         And have the parties come to some sort of resolution

19    regarding the appropriate scope of production of supplemental

20    disciplinary records?

21         MS. SPEIGHT:  We haven't, your Honor.  And I apologize

22    for that.  I intended to reach out to Mr. Lozar this morning

23    with the index in front of me and I wasn't able to.  I do

24    appreciate that he is asking for discrete documents if the

25    underlying file somehow implicates fraud or dishonesty.  What

1  we've produced is indexes.  I will request the underlying

2  files.  I don't have the underlying files but I will request

3  them.  I don't think that that's necessarily unfair but we

4  haven't gone through item by item.

5           THE COURT:  OK.  All right.  Well, Ms. Speight, are

6  you at Fordham all day today?

7           MS. SPEIGHT:  Yes, your Honor.  I am going back to the

8  office but I am here until five or 5:30.

9           THE COURT:  I don't know therefore that you two will

10 reach resolution today.  I guess hopefully I'll hear from you

11 very early next week if there is something that is in dispute.

12 And though I don't enjoy offering this up, I can do an in

13 camera inspection if the parties need me to do is with respect

14 to the records.

15          MS. SPEIGHT:  Thank you, your Honor.

16          THE COURT:  On the issue of depositions, have they

17 been scheduled or rescheduled, Mr. Lozar?

18          MR. LOZAR:  Your Honor, they haven't been rescheduled

19 but (inaudible) has been applied to the defense counsel five or

20 six dates over the course of the next two weeks.

21          THE COURT:  OK.  Ms. Speight, do you contemplate that

22 there will be any problem getting these depositions taken?

23          MS. SPEIGHT:  One thing that Mr. Lozar and I talked

24 about our deadline for deposition is our deadline for discovery

25 the 31st.  If we are permitted we'd would like to lead in up to

1    the 31st because next week is going to be a real challenge.

2                  THE COURT:  Yes.

3                  MS. SPEIGHT:  OK.  Then, no, we'll get it done.  It's

4    obviously part of why the frustration over the settlement arose

5    but we'll get it done.

6                  THE COURT:  OK.  It's fine if you take until the 31st.

7             I have read both sides' views of what happened with

8    the settlement.  It just seems to me the case hasn't settled.

9    There are explanations on both sides.

10            I am not sure that there's something that,

11   Ms. Speight, you want me to do

12               MS. SPEIGHT:  At this point, your Honor, I don't think

13   there is either.  It's a really unusual occurrence I know that

14   has happened in this case.  So my intention in writing which

15   I've raised with Mr. Lozar before is that you know maybe

16   somebody who is not a lawyer affiliated with this case might be

17   able to be persuasive to plaintiff because this -- I've never

18   had to withdraw a demand especially when we need it.

19               THE COURT:  But, Ms. Speight, I thought the issue was

20   that the demand number had changed because Mr. Lozar had

21   undertaken the effort of getting ready for depositions.  Did I

22   misread that?

23               MS. SPEIGHT:  Yes.  Well, the demand -- there was a

24   demand before vacation and then it was withdrawn.  Then there

25   was a demand after our conference before deposition and we were

1    very close, like very, very close.  And my position, Mr. Lozar

2    is always absurd when you are this close to resolving the case.

3    Plaintiffs number didn't move in about two weeks and so we came

4    up and it came up again.  And literally, I think it was within

5    30 minutes of us sending the last e-mail to confirm -- well,

6    actually, we've now pulled the offer.  There is no demand.  So,

7    it's just very strange but at the end of the day we can try the

8    case.  So, it's fine.  I thought that it kind of, an actual

9    plaintiff hearing from the judge that that kind of posturing is

10   unusual it might not necessarily help us, might get the case

11   done but if he doesn't want to settle, that's fine with us.

12            THE COURT:  Okay.  Then I won't -- I mean, Judge

13   Netburn is still involved with the case.  There was a

14   mediation.  There can be another one but, obviously, both sides

15   have to want it.

16            All right.  Ms. Speight, if there is nothing further

17   on that issue I won't trouble you further on that issue.

18            Mr. Lozar, I have read your side so I don't think I

19   need to hear anything else.

20            MR. LOZAR:  That's correct, your Honor.

21            THE COURT:  Ms. Speight, may I ask you please to

22   obtain a copy of this proceeding since I may one day need it?

23            MS. SPEIGHT:  Absolutely, your Honor.

24            THE COURT:  We still have a conference on the 9th of

25   February; is that not correct?

1          MS. SPEIGHT:  That is correct, your Honor.

2          MR. LOZAR:  That's correct.

3          THE COURT:  I thank you both very much.  I'll let you

4    get back to judging and lawyering and have a great weekend.

5          MS. SPEIGHT:  Thank you, your Honor.

6                         (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25