The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com

**MEMO ENDORSED** RL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2017

MARCH 26, 2017

Re:     <u>Rodriguez v. City of N.Y.</u>, No. 16 Civ. 744

Dear Judge Failla:

I represent Plaintiff in the above-captioned action. I write to move for conference with the Court to discuss a motion for sanctions against Defendants FRCP 37 for failing to comply with their discovery obligations pursuant to the Court's prior Orders and the Federal Rules. I also ask for conference in order to address Plaintiff's continuing need for the Court's assistance in obtaining Defendants' compliance, and to set a trial date.

I attempted to resolve the discovery dispute amicably with Defendants. I have emailed and/or called Defense Counsel roughly every other day to ask on forthcoming compliance. This week, when I expressed concern that we would need to bother the Court again because the due material had not been produced and the deadline was approaching, Defendants told me that this was unnecessary because they had various people working on the discovery and there would be a production ready for delivery by the deadline. At no time did Defendants indicate to me that they objected to producing anything that they were slated to produce, or that they were unable to produce it.

Finally, I am unable to include Defendants' position here regarding whether they anticipate motion practice, because when they finally sent me some correspondence about this on Friday, they announced they were flying out of town; would not return until Tuesday, March 28, 2017; and provided me with no information about motion practice. I ask that the Court consider this to constitute Defendants' waiver of any proposed summary judgment motion. In addition to asking for the Court's assistance in obtaining the due discovery, Plaintiff asks that the Court set a trial date and a related JPTO and <u>in</u> <u>limine</u> schedule.

I.      **General Background**

On January 8, 2017, I was compelled to move for discovery after Defendants failed to produce a long-promised batch of paper discovery prior to the Individual Defendants' depositions. <u>Docket No. 42</u> (refiled at <u>Docket No. 44</u>). In response, the Court held a conference and directed the Defendants produce records. Defendants failed to produce some of these records prior to Individual Defendants' depositions, even as one of the Defendants testified that he had reviewed an evidence voucher to prepare himself for the proceeding which, at this writing, I still do not have (Voucher No. 1000331708).

On January 29, 2017, I filed another discovery motion for that and other paper discovery including, but not limited to, Street Narcotics Enforcement Unit ("SNEU") guidelines and/or training material, records showing whether and when Defendants had received SNEU training in accordance with Commissioner Kelly's directive, evidence vouchers with chain of custody records, and disciplinary files. <u>Docket No. 48</u>.

On February 3, 2017, the Court held another conference with the Parties during which it ordered Defendants to produce the SNEU material and the SNEU training records, and during which Defendants represented to the Court they agreed they would produce the evidence vouchers, related chain-of-custody records and the disciplinary files. <u>Docket Entry 2/3/2017</u>. The Court directed Defendants to produce all material with enough time to permit the Parties to provide a meaningful March 10 status update.

On March 6, 2017, I filed a motion asking for the Court's assistance in obligating Defendants to comply with their discovery responsibilities, because they had not yet produced anything and the March 10 deadline for the status report was approaching. Docket No. 52. On March 8, 2017, Defendants wrote to the Court and asked for time extension because they were working on getting documents. As an example, Defendants told the Court that they had "identified and are in the process of obtaining 'SNEU Guidelines'", that they expected them by March 10, 2017, and that they would "promptly produce the guidelines upon receipt." Id.

The Court granted Defendants their requested extension. March 10 came and went without the production. I wrote to Defendants and asked that they keep to their representation that they would produce that and other things on a rolling basis so that we could methodically complete discovery by March 24. Defendants agreed, then basically ignored my emails and voicemails for two weeks, except to chide me for worrying that they would fail to produce the material by the deadline.

On Friday, March 24, 2017, the date the discovery was due, I filed a letter with the Court at approximately 8:00 p.m. stating that discovery was not yet complete. Even at that late hour, Defendants claimed that there would be a late-night production that would cure the outstanding deficiencies. Unfortunately, they have now produced what they are going to produce, and deficiencies remain.

## II.     Outstanding Discovery

### a.  SNEU Guidelines Manual

In an email sent to me on Friday night, Defendants claimed for the first time that there are no SNEU Guidelines or SNEU Guidelines Manual, to produce, despite that this record very plainly exists. First and foremost, Defendants told the Court on May 8, 2017, that they had identified SNEU Guidelines that they would produce that week. Exhibit 1.

In addition, I long ago produced to Defendants in discovery the NYPD Patrol Guide Interim Order No. 24-12, which took effect in June 2012 at the direction of NYPD Commissioner Ray Kelly, which states that precinct commanders must assure that their officers know and adhere to the SNEU Guidelines Manual when performing SNEU work. Exhibit 2. This Interim Order states that the SNEU Guidelines Manual must be a part of the command's reference library. Id. This Interim Order received a permanent NYPD Patrol Guide Procedure Number at 212-116, and that document also plainly refers to the SNEU Guidelines Manual as an important document that officers doing SNEU work must know and consult.

Next, Defendants' testimony also shows that the record exists. Cruz testified that a SNEU manual guide existed, Rivas testified that he received written SNEU materials when he received SNEU training, Acosta testified that a SNEU manual existed (though he later claimed confusion as to what exactly it was), and more.

Defendants' refusal to produce this record in a timely fashion has already been problematic in that it has complicated Plaintiff's ability to fairly have follow-up discovery relating to its contents. Now they seek

to deprive Plaintiff of the record altogether by misrepresenting that it does not exist. Plaintiff asks that the Court require Defendants produce this record as they have been previously and repeatedly Ordered to do.

### b. SNEU Training Records

Defendant testimony affirmed the existence of SNEU training records at their precinct's administrative office that would show whether and when they obtained the required SNEU training. In other Section 1983 cases, I have received these records showing the Courses that an officer has taken, along with the corresponding credit received, grade and the date of instruction. I spoke to Ms. Speight after the Officers' Depositions about their own knowledge of where to find these records. As with the SNEU Guidelines Manual, I ask that the Court require Defendants to produce these records as they have been previously and repeatedly Ordered to do.

### c. Voucher and Chain-of-Custody Records

This category of records is simple enough, and Defendants have finally produced some of the vouchers. However, they have yet to produce Voucher No. 1000331708. In addition, they have failed to produce the underlying chain-of-custody records which they represented they would. I ask for the Court's assistance in directing Defendants to produce this forthwith.

### d. Disciplinary Files

With respect to Defendants' disciplinary files, Defense Counsel indicated at conference with the Court that they would produce the files after Plaintiff agreed that the complainant's last names could, at least initially, be redacted. Defendants have produced two file summaries, but not the actual files. This was not the accord between the Parties. It should be noted that one of the files that Defendants are withholding resulted in substantiated charge of making a false statement to CCRB, which was then forwarded onto the Department Advocate's Office for further prosecution and/or discipline. These records reflect upon this Defendant's credibility, yet I have only received an exceedingly brief summary report. The other file relates to a multi-year corruption investigation of a group of Defendants. Insofar as Defendants would not have the summary of the file without having ordered the underlying file itself, Defendants already have the files to produce, and I ask that the Court direct them to do so.

## III. Conclusion

In light of the foregoing, I ask that the Court set conference to address Defendants' failure to comply with the Court's Orders and Defendants' FRCP obligations more generally. Thank you for reading my position.

Sincerely,

Ryan Lozar

Ryan Lozar

Defendants are directed to file a detailed response to the above-correspondence by April 3, 2017.

Any future correspondences to the Court should have standard margins, i.e. one inch, and a courtesy copy of the ECF filing should be emailed to Chambers.

Dated:     March 28, 2017          SO ORDERED.
           New York, New York

                                   HON. KATHERINE POLK FAILLA
                                   UNITED STATES DISTRICT JUDGE