**MEMO ENDORSED**


**ZACHARY W. CARTER**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**MELANIE SPEIGHT**
*Senior Counsel*
Phone: (212) 356-2425
Fax: (212) 356-3509
mspeight@law.nyc.gov

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: \_April 5, 2017\_\_

April 3, 2017

**VIA ECF & EMAIL**
Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    <u>Ernesto Rodriguez v. City of New York, et al.</u>, 16-CV-744 (KPF) (SN)

Your Honor:

     I am a Senior Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, representing defendants City of New York, Police Officer ("P.O.") Acosta, Sergeant Cruz, P.O. Guzman, P.O. Regan, and P.O. Rivas in the above-referenced matter. Pursuant to the Court's Order dated March 28, 2017, defendants respectfully write in response to plaintiff's submission dated March 26, 2017, regarding the conclusion of fact discovery.

     Plaintiff's letter disappointingly mischaracterizes both defendants' compliance with their discovery obligations and the nature of the parties' communications regarding this matter. Defendants have taken considerable efforts to comply with plaintiff's discovery demands. In the interest of cooperation, as has been evidenced at the parties' appearances before the Court to discuss these matters, defendants have worked to limit scope of their objections to plaintiff's untimely demands and have repeatedly suggested compromises to work with plaintiff in an effort to satisfy plaintiff's requests without reflexively resorting to motion practice. Nevertheless, plaintiff has repeatedly distorted the parties' discovery efforts to the Court, most recently in his submission dated March 28, 2017.

     Counsel for the parties were in regular communication regarding defendants' efforts to meet the March 24, 2016 discovery production deadline. In response to plaintiff's inappropriate and excessive correspondence, the undersigned emphasized to plaintiff that the individuals who worked with the undersigned to fulfill plaintiff's document requests in accordance with the Court directive were, like the undersigned, doing so in addition to significant additional responsibilities but were, nonetheless, working diligently to ensure

1

compliance. On the afternoon of March 24, 2016, defendants sent plaintiff the requested items, with the exception of an IAB closing report, which defendants promised to send, and did send, that evening. Having been informed by plaintiff's counsel that he intended to leave the office and was available for a limited period of time, the undersigned reached out by telephone to inquire whether plaintiff wished to confer during his window of availability. The undersigned specifically informed plaintiff that there were not, as initially anticipated, responsive 2012/2013 SNEU materials, and that the undersigned would be available by cell to discuss that matter and the production at plaintiff's convenience. The undersigned mentioned that she would be travelling out of town the following morning, a Saturday, and returning on March 28, 2017, the following Tuesday morning, but did not suggest that plaintiff could not contact her as a result of that brief trip.

Following depositions, plaintiff demanded a Street Narcotics Enforcement Unit manual that would have been in effect in 2013. Plaintiff questioned the individual defendants about whether they had ever received such a manual, and received various responses based upon the individual defendants' work history. Notably, most of the individual defendants expressly testified that they did not have any memory of seeing or receiving a manual. Plaintiff's representations regarding defendants' testimony on the manual are misleading at best.

Sergeant Cruz, was the sole individual who recalled a manual, but he couldn't pinpoint a time frame in which he may have seen it. He testified that, in addition to lectures, instructors provided "sort of like a manual guide. That was a long time ago." Cruz Dep., at 16:18-19. Sergeant Cruz clarified that he did not remember how long ago he received SNEU training. (Cruz Dep., at 17:5-10. "Q:…do you remember when the SNEU training would have happened? Could you give me, like, a range of years, if you're able? A: Yeah, I can't say. I don't remember. Q: Even the decade. The '90s, the '80s? A: No.").

P.O. Regan has not seen a SNEU manual. (Regan Dep., at 20:17-21 "Q: Have you ever seen a SNEU manual specific to work? A: A SNEU manual? Q: Yes. A: No.") P.O. Guzman similarly did not believe that he had received a manual. Specifically, P.O. Guzman testified that he estimated that he had received SNEU training between 2004 and 2008, and did not remember any SNEU manual being used. (Guzman Dep., at 21:12-17, "Q: Is there any sort of paper training materials for any of that training that you remember? For example, New York Patrol Guide Procedure Numbers, or any specific manuals? A: No. Not that I remember.") P.O. Rivas testified that he did not remember a SNEU manual. (Rivas Dep., at 60:22-24 "Q: At any point did you see like an overall SNEU manual? A: I don't remember.") P.O. Acosta that he was not aware of whether there was a SNEU manual. (Acosta Dep., at 142:22-143: "Q: The SNEU manual, is that something that you ever use past the training? A: I don't even know if there is a manual. Q: I thought you just said that there are. A: There are different training - - different manuals. I'm not sure if there is a manual for SNEU. If there is one for SNEU, I'm not sure if I got one back then.")

Liaisons from the Police Department searched for a responsive manual. They identified "SNEU Guidelines" believed to be responsive, and arranged to produce them to defendants. However, the Guidelines and manual were not in effect in 2013; they were set forth in 2014. As such, they are not responsive to plaintiff's inquiry. Individuals within the police

department searched for an analogous set of materials that would have been in effect in 2013. The undersigned has been informed that no such materials are available. It appears that the Guidelines were amended in 2014 to fully replace the previous edition, and the previous edition was not maintained. In short, defendants have diligently searched to determine whether a manual or guidelines responsive to plaintiff's request exists, and are confident that they do not. Moreover, particularly in light of these findings, defendants reiterate their response, set forth in their letter dated February 1, 2017, that plaintiff's untimely request for these materials seeks irrelevant information, and is not proportional to the needs of plaintiff's case. To the extent that plaintiff now seeks training records showing "whether and when [defendants] obtained the required SNEU training," from an administrative office, plaintiff's request is untimely and redundant, as the individual officers were all questioned and provided testimony about the manner and extent of their training.

Plaintiff further represents that defendants have not provided adequate property invoices and "chain of custody records." Defendants have produced numerous invoices pertaining to plaintiff's arrests and those arrested in connection with plaintiff's actions. Plaintiff's previous demands specified Inovice No. 1000331710, which defendants produced on March 8, 2017. Plaintiff now cavalierly states that defendants have failed to produce another voucher, No. 1000331708, related to cocaine seized in connection with the arrest of another individual arrested on May 9, 2013, Beato Perez. Plaintiff received files from the District Attorney's Office regarding this prosecution, including the second page of this invoice, and indeed plaintiff produced it to defendants as P 182 on March 2, 2017. Defendants maintain their position that plaintiff's request for "chain of custody" records relating to each invoice is misplaced. To the extent that there are notes regarding the movement of evidence, it is noted on the produced invoices. Moreover, as previously argued, this information is both irrelevant and disproportionate to the needs of plaintiff's case.

Finally, defendants have produced the closing reports for plaintiff's sought IAB and CCRB complaints, with the last names of non-parties redacted, per the parties' agreement. Defendants maintain that this is the most efficient and appropriate way to respond to plaintiff's demand for unrelated disciplinary investigations. Underlying files, for both CCRB and IAB investigations, are comprised of hundreds of pages, containing sensitive information including personal details of members of the police department and non-parties, draft reports, and other material not subject to disclosure. The closing reports respond to plaintiff's request without requiring the extensive investment of careful review that would be required in order to protect disclosure of privileged or highly sensitive information. This is particularly true as the underlying reports have no bearing on motion practice and are highly unlikely to be deemed admissible at trial.

Regarding plaintiff's request that the Court deem defendants' long-pronounced intention to move for summary judgment waived, defendants respectfully request that the Court deny plaintiff's application. Plaintiff's suggestion that there has ever been any ambiguity regarding defendants' intention to move for summary judgment in the event that plaintiff does not voluntarily withdraw several of his purported claims is absurd. Defendants made this position clear before the Court at the parties' post-Plan initial conference, reiterated their position at the parties' February 3, 2017 conference, and expressed it again in their submission dated

March 8, 2017.  Plaintiff's suggestion that he was unaware of defendants' position when filing a purported status update is disingenuous.  Based upon plaintiff's submission, defendants did not file a separate letter setting forth their intention to seek a pre-motion conference but, in retrospect, they should have.

Defendants maintain that plaintiff's boilerplate allegations, none of which bear a compelling connection to the facts surrounding plaintiff's arrest on May 23, 2013, fail utterly to give rise to a <u>Monell</u> claim.  Plaintiff's remaining federal claims against the individual defendants are for false arrest; malicious prosecution; denial of the right to a fair trial by virtue of an alleged fabrication of evidence; and failure to intervene.  As has been consistently pointed out to plaintiff throughout this litigation, his purported claims are alleged too broadly against each of the five individual defendants.  Plaintiff cannot establish each individual defendant's personal involvement in his alleged claims and, therefore, should withdraw them voluntarily.  To the extent that he fails to do so, defendants are entitled to summary judgment.

For example, plaintiff's alleges that defendants lacked probable cause to effectuate his arrest on May 23, 2013.  It is undisputed that his arrest was based upon the reported representations of P.O. Rivas and P.O. Acosta.  There is no evidence to refute the conclusion that the other individual defendants acted reasonably in relying upon the representations of P.O. Rivas and P.O. Acosta.  Nonetheless, plaintiff's false arrest claim is currently advanced against each individual defendant.  Similarly, plaintiff's malicious prosecution claim is pressed against every individual defendant, despite the fact that Sgt. Cruz, P.O. Regan, and P.O. Guzman had no personal involvement in plaintiff's prosecution.  Finally, plaintiff's alleged fabrication of evidence and denial of the right to a fair trial claim are not sustainable.  There is no evidence to support a contention that any defendant fabricated evidence against plaintiff, such that they deprived him of the right to a fair trial. At best, plaintiff's allegations simply give rise to a malicious prosecution claim.

Throughout this litigation defendants have suggested to plaintiff that, if, as he has intermittently claimed at points in this action, he actually wants to proceed directly to trial, then the parties must try to narrow the claims by stipulation.  Thus far, plaintiff has been unwilling to do so.  As such, defendants must move for summary judgment.

In sum, defendants respectfully request that plaintiff's requests, set forth in his submission dated March 28, 2017, be denied entirely.

Thank you for your consideration herein.

Respectfully submitted,

/s/
Melanie Speight
*Senior Counsel*

CC:   <u>VIA ECF</u>
Ryan Michael Lozar
*Plaintiff's Counsel*

Law Firm of Ryan Lozar
305 Broadway, 9th Floor
New York, NY 10007

```
The parties will appear for a conference on April 20, 2017, at 11:30 A.M.
in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square,
New York, New York, 10007.

Dated:     April 5, 2017          SO ORDERED.
           New York, New York
```

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE