UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ERNESTO RODRIGUEZ,

                                                                Plaintiff,

                       -against-

CITY OF NEW YORK,
NYPD OFFICER ALEJANDRO RIVAS,
NYPD SERGEANT FREDY CRUZ,
NYPD OFFICER FELIX ACOSTA,
NYPD OFFICER DANNY GUZMAN,
NYPD OFFICER BRENDAN REGAN,
AND JOHN DOE OFFICERS 1 - 4,

                                                             Defendants.

**DEFENDANTS' STATEMENT OF UNCONTESTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

16-CV-744 (KPF) (SN)

------------------------------------------------------------------------x

        Defendants City of New York, Police Officer ("P.O.") Felix Acosta, Sergeant ("Sgt.") Fredy Cruz, P.O. Danny Guzman, P.O. Alejandro Rivas, and P.O. Brendan Regan submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District for the Southern District of New York setting forth the material facts to which they contend there is no genuine issue to be tried. Plaintiff's factual allegations are accepted herein only for the purposes of the instant motion:

### On May 9, 2013, Officers Observe A Drug Sale Involving Three Men

        1.        On May 9, 2013, defendants P.O. Acosta and P.O. Rivas were working as police officers assigned to the 33rd Precinct. That day, they worked as members of a team conducting arrests based upon observed narcotics transactions, and were assigned to an observation post. (Transcript of the Deposition of P.O. Acosta (hereinafter "Acosta Dep.") annexed to the Declaration of Melanie Speight dated July 3, 2017 (hereinafter "Speight Decl.") as Exhibit

(hereinafter "Ex.") G; Transcript of the Deposition of P.O. Rivas (hereinafter "Rivas Dep.") annexed to the Speight Decl. as Ex. H, at 7:2-5;12:24-13:2; 15:1-5.)

2. From an observation post, they were able to watch activity occurring in the vicinity of St. Nicholas Avenue between 162nd and 163rd Streets. (Ex. G, Acosta Dep., at 26:16-20.)

3. At approximately 4:32 p.m., from their observation post, P.O. Acosta observed what appeared to be a hand-to-hand narcotics transaction take place in front of 1045 St. Nicholas Avenue. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

4. During the transaction, based upon his observations, P.O. Acosta identified a buyer and a seller. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

5. In addition, P.O. Acosta observed a third man who engaged with both the buyer and the seller. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

6. The third man caught P.O. Acosta's attention, in part, because he was standing in the area bouncing a tennis ball. (Ex. G, Acosta Dep., at 129:19-130:12; 59:12-67:12.)

7. At the time, P.O. Acosta was aware that individuals frequently used tennis balls to discreetly transfer narcotics. (Ex. G, Acosta Dep., at 130:3-12.)

8. The buyer and the seller were not observed interacting directly with one another. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

9. Instead, the third man was seen approaching the buyer and accepting money from him. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

10. After accepting money, the third man approached the seller, gave him the money, and, in exchange, accepted a small object. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

11. The third man then returned to the buyer and handed the object to him. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

12. Upon receiving the object, the buyer left the area. (Ex. G, Acosta Dep., at 36:4-38:9; 59:12-67:12.)

### On May 9, 2013, The Buyer Is Arrested

13. P.O. Acosta relayed his observations and a description of the buyer to his fellow officers. (Ex. G, Acosta Dep., at 38:7-9.)

14. Shortly thereafter, officers apprehended and arrested a buyer. (Ex. G, Acosta Dep., at 38:7-9.)

15. In total, two buyers were arrested that day based upon their interactions with the same seller. (Ex. G, Acosta Dep., at 72:18-20.)

16. P.O. Guzman was the arresting officer for one buyer, whose initials are B.P., who was found to be in possession of four bags of cocaine. (Transcript of the Deposition of P.O. Guzman (hereinafter "Guzman Dep."), at 64:10-65:16; B.P. Arrest Report, annexed to the Speight Decl., at Ex. O.)

17. P.O. Rivas was the arresting officer for another buyer, whose initials are J.R.E., and who was also found in possession of cocaine. (J.R.E. Arrest Report, annexed to the Speight Decl. as Ex. P.)

### On May 9, 2013, The Seller and the Third Man Are Not Arrested

18. Officers returned to the area to apprehend the seller and third man. (Ex. G, Acosta Dep., at 68:24-69:3; 71:9-10.)

19. The seller and the third man, however, had left the area and did not return. (Ex. G, Acosta Dep., at 73:9-74:15.)

20. The seller was not arrested on May 9, 2013. (Transcript of the Deposition of Sgt. Cruz (hereinafter "Cruz Dep."), annexed to the Speight Decl., as Ex. I, at 136:17-19; Ex. G, Acosta Dep., at 68:4-69:3; 73:9-19.)

21. The third man was not arrested on May 9, 2013. (Ex. G, Acosta Dep., at 68:4-69:3; 73:9-19.)

22. While he did not know his name, on May 9, 2013, P.O. Acosta recognized the third man from the neighborhood. (Ex. G, Acosta Dep., at 117:14-118:17; 133:7-12; 140:12-16.). P.O. Guzman also recognized plaintiff from the neighborhood. (Ex. K, Guzman Dep., at 27:13-14, "I recognized Ernesto from that particular corner he always hangs out at.")

### On May 9, 2013, P.O. Rivas Creates A Complaint Report

23. On May 9, 2013, P.O. Rivas created a "Complaint Report" stated that "at T/P/O (time and place of occurrence), deft. (defendant) was observed in possession of alleged cocaine at above location." (Ex. H, Rivas Dep., at 35:5-7; May 9, 2013 Complaint Report, annexed to the Speight Declaration as Ex. N; Ex. I, Cruz Dep., at 81:18-82:4.)

24. P.O. Rivas created the complaint in connection with the alleged activities of the two apprehended buyers and the un-apprehended third man. (Ex. N. May 9, 2013 Complaint Report; Ex. I, Cruz Dep., at 83:10-85:16.; Ex. G, Acosta Dep., at 54:5-12.)

25. The complaint was left "open" because the third man had not been apprehended. (Ex. I, Cruz Dep., at 137:13-18; Ex. J, Regan Dep., at 77:18-80:10.)

### Plaintiff Cannot Dispute Officers' Observations Of May 9, 2013

26. Plaintiff denies that he participated in the sale of narcotics on May 9, 2013. (Transcript of the Deposition of Plaintiff (hereinafter "Pl's Dep."), annexed to the Speight Decl. as Ex. F, at 105:18-106:4.)

4

27. Plaintiff does not remember anything about his activities on May 9, 2013. (Ex. F, Pl's Dep. at 104:12-14 "Q: Do you have any memory of the events of May 9, 2013? A: No."; 104:18-20 "Q: Sitting here today, do you know anything about what you did on May 9, 2013? A: I don't know.")

28. Plaintiff does not know whether he was in the vicinity of 1045 St. Nicholas Avenue on May 9, 2013. (Ex. F, Pl's Dep., at 107:13-24 "Were you on this block on May 9, 2013? A: I can't remember what I was doing that day.")

29. That block, however, is only one block away from plaintiff's apartment. (Ex. F, Pl's Dep., at 108:9-10.)

### On May 23, 2013, P.O. Acosta and P.O. Rivas Recognize Plaintiff

30. On May 23, 2013, P.O. Rivas and P.O. Acosta worked together again at an observation post. (Ex. H, Rivas Dep., at 12:24-13:2; 15:1-5; Ex. G, Acosta Dep., at 25:2-3; Ex. K, Guzman Dep., at 68:24-69:6; Ex. I, Cruz Dep., at 23:22-24; 45:16-20.)

31. Again, they observed the vicinity of St. Nicholas Avenue between 162nd and 163rd Streets. (Ex. H, Rivas Dep., at 16:16-17.)

32. They were both equipped with binoculars. (Ex. H, Rivas Dep., at 13:21; 14:13-15; 20:16-18.)

33. Meanwhile, P.O. Regan, P.O. Guzman, and Sgt. Cruz were working on a team with P.O. Acosta and P.O. Rivas, but were assigned to a car. (Transcript of the Deposition of P.O. Regan (hereinafter "Regan Dep."), annexed to the Speight Decl. as Ex. J, at 22:9-13; 30:12-20; Ex. I, Cruz Dep., at 23:22-24; 45:16-20.)

34. These officers, P.O. Regan, P.O. Guzman, and Sgt. Cruz, were acting as a "catch team," meaning that they were "in a vehicle designated to pick up individuals that were

5

identified to be arrested." (Ex. K, Guzman Dep., at 11:3-13; Ex. J, Regan Dep., at 30:25-31:2; Ex. I, Cruz Dep., at 24:17-25:15.)

35. Sgt. Cruz was familiar with P.O. Acosta and P.O. Rivas's observation post, and believed it to provide a good view of the area. (Ex. I, Cruz Dep., at 56:19-21, "The observation post was very, very nearby in a very, very high building with no obstruction whatsoever. It's one of our favorite buildings.")

36. At some point, P.O. Acosta alerted the catch car officers to two men walking towards 2040 Amsterdam Avenue, prompting the catch car officers to effectuate a stop. (Ex. J, Regan Dep., at 32:13-34:5; Ex. I, Cruz Dep., at 24:7-8 "My recollection was hearing Acosta on the radio."; Ex. I, Cruz Dep., at 23:3-13.)

37. In particular, P.O. Acosta put over a radio description of plaintiff. (Ex. K, Guzman Dep., at 24:17-21.)

38. In the transmission, P.O. Acosta indicated that he recognized an individual who he had recently observed in a hand-to-hand narcotics sale. (Ex. I, Cruz Dep., at 46:2-5 "Officer Acosta went over the radio and indicated that he's observing an individual that he observed a couple of days ago involving a hand-to-hand as a seller.")

39. Specifically, he "told them [he had] the visual on the person that - - the tennis ball guy." (Ex. K, Acosta Dep., at 35:6-10; Ex. I, Cruz Dep., 45:16-48:2 ("You know, he had mentioned the location, and he had mentioned he was the guy bouncing the ball…A: Right. On May 9th, he indicated that the guy that was selling, he was also bouncing a ball")

40. The observation post officers further conveyed to the catch team by radio that "there was an open Complaint for Mr. Ernesto's [plaintiff's] arrest for the sale of narcotics." (Ex. K, Guzman Dep., at 27:4-5.)

41.     P.O. Acosta, by radio, informed the catch car that the individuals were walking South on St. Nicholas. (Ex. I, Cruz Dep., at 48:6-8.)

42.     Upon seeing the two individuals, Sgt. Cruz confirmed their description with P.O. Acosta. (Ex. I, Cruz Dep., at 52:2-7; Ex. G, Acosta Dep., at 120:22-121:15.)

43.     The catch car officers approached the two men, later identified as plaintiff and J.R., near 2040 Amsterdam Avenue. (Ex. J, Regan Dep., at 33:24-35:10.)

44.     Sgt. Cruz interacted with plaintiff without assistance from P.O. Guzman or P.O. Regan. (Ex. I, Cruz Dep., at 53:21-24; Ex. J, Regan Dep., at 35:7-10.)

45.     Sgt. Cruz then escorted plaintiff outside of the building, and P.O. Acosta confirmed his identity from his observation post. (Ex. I, Cruz Dep., at 54:19-55:10, 55:19-56:21; Ex. K., Guzman Dep., at 101:16-17; Ex. G, Acosta Dep., at 122:3-10.)

### **Plaintiff Is Arrested**

46.     Sgt. Cruz handcuffed plaintiff and placed him under arrest. (Ex. K, Guzman Dep., at 32:8-11; 61:16-24; Ex. I, Cruz Dep., at 61:16-24.)

47.     Plaintiff was transported to the 33rd Precinct and, there, another confirmatory identification was made. (Ex. I, Cruz Dep., at 62:16-22; Ex. G, Acosta Dep., at 126:4-127:9; Ex. H, Rivas Dep., at 48:11-15)

48.     Sgt. Cruz, as supervisor, approved plaintiff's arrest. (Ex. I, Cruz Dep., at 77:21-78:9; Ex. B, Arrest Report.)

49.     P.O. Acosta was plaintiff's assigned arresting officer. (Ex. B, Arrest Report; Ex. G, Acosta Dep., at 89:5-6; Ex. I, Cruz Dep., at 80:7-12.)

50.     In that capacity, P.O. Acosta created an arrest report. (Ex. B, Arrest Report; Ex. G, Acosta Dep., at 53:4-11.)

51. The Arrest Report referenced the original Complaint Report opened on May 9, 2013 by P.O. Rivas. (Ex. B, Arrest Report; Ex. I, Cruz Dep., at 78:14-20.)

52. Plaintiff was charged, in the arrest report, with criminal sale of a controlled substance in the third degree. (Ex. B, Arrest Report.)

53. As arresting officer, P.O. Acosta signed a criminal court complaint drafted by a member of the New York County District Attorney's Office. (Criminal Complaint, annexed to the Speight Decl. as Ex. C.)

54. In the criminal complaint, P.O. Acosta attested that he had been informed by P.O. Rivas about plaintiff's conduct on May 9, 2013.  (Ex. C, Criminal Complaint.)

55. P.O. Rivas, having opened the complaint, was the officer of record for plaintiff's conduct of May 9, 2013.  (Ex. G, Acosta Dep., at 87:12-88:4; Ex. H, Rivas Dep, at 41:14 "I was the observing officer"; Ex. I, Cruz Dep., at 73:11-14; 74:16-25; 75:8-15.)

**Plaintiff Is Briefly Prosecuted**

56. Plaintiff was arraigned on May 24, 2013. (Prisoner Arraignment Record, annexed to the Speight Decl. as Ex. D.)

57. At arraignment, plaintiff's case was adjourned until September 9, 2013. (Criminal Court record, annexed to the Speight Decl. as Ex. L.)

58. On June 14, 2013, charges against plaintiff were dismissed on motion of the District Attorney's Office. (Certificate of Disposition, annexed to the Speight Decl. as Ex. E.)

**P.O. Guzman And P.O. Regan Have No Involvement In Plaintiff's Arrest Or Prosecution**

59. P.O. Guzman was not plaintiff's arresting officer. (Ex. B, Arrest Report.)

60. P.O. Regan was not plaintiff's arresting officer. (Ex. B, Arrest Report.)

61. P.O. Guzman and P.O. Regan did not interact with plaintiff at the location of his arrest. (Ex. I, Cruz Dep., at 53:21-24; Ex. J, Regan Dep., at 35:7-10.)

62. At the time of plaintiff's arrest, P.O. Guzman and P.O. Regan effectuated the arrest of another individual, J.R., for possession of marijuana. (Ex. K, Guzman Dep., at 44:3-4; Ex. J, Regan Dep., at 33:25-34:5.)

63. P.O. Guzman did not sign a criminal complaint charging plaintiff with a crime. (Ex. C, Criminal Complaint.)

64. P.O. Regan did not sign a criminal complaint charging plaintiff with a crime. (Ex. C, Criminal Complaint.)

65. Neither P.O. Guzman nor P.O. Regan is cited as a source of information in the criminal complaint. (Ex. C, Criminal Complaint.)

66. Neither P.O. Guzman nor P.O. Regan was interviewed by a member of the District Attorney's Office regarding plaintiff's arrest. (DA Datasheet, annexed to the Speight Declaration as Ex. M.)

Dated: New York, New York
July 3, 2017

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants City, Acosta, Cruz, Guzman, Regan, and Rivas*
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-2425

By: /s/_____
Melanie Speight
*Senior Counsel*

TO:   VIA ECF
Ryan Michael Lozar
*Plaintiff's Counsel*
Law Firm of Ryan Lozar

305 Broadway, 9th Floor
New York, NY 10007